## Lakes v. Commonwealth.

(Decided September 28, 1923.)

### Appeal from Madison Circuit Court.

1. **Intoxicating Liquors—Affidavit for Search Warrant Insufficient as to Grounds for Belief.**—An affidavit for a search warrant, stating that the affiant had "reasonable grounds to believe," etc., and that his reason for entertaining such a belief was "a general talk of the neighborhood" was insufficient to warrant issuance of a search warrant.

2. **Searches and Seizures—Constitutional Provision Extends Only to Owner of Searched Possessions or Articles.**—The protection of the constitutional provision prohibiting unreasonable searches and seizures extends only to owners of wrongfully searched possessions or articles, or those entitled to the possession of them, and not to entire strangers who neither own nor possess them.

3. **Intoxicating Liquors—Evidence Insufficient to Convict of Ownership of Illicit Still.**—Proof of existence of a still located on another's land and about 150 or 200 yards from defendant's residence, and about that distance from the boundary of his land, with no proof remotely connecting him with its ownership or operation,

plus testimony with reference to his reputation, held insufficient to convict him of the charge of owning the still, notwithstanding the statute making the reputation of defendant admissible in such prosecutions. Acts 1922, chapter 33, section 15.

4. Intoxicating Liquors—Reputation Alone Insufficient to Sustain Conviction.—It was not the purpose of the statute making the reputation of a defendant admissible in prosecution for owning illicit still (Acts 1922, chapter 33, section 15) to make that testimony alone sufficient to sustain a conviction.

JOHN NOLAND for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Walter Lakes, was indicted, tried and convicted in the Madison circuit court on the charge of owning an illicit or moonshine still. From the judgment rendered on the verdict he prosecuted this appeal and through his counsel insists that the verdict is not sustained by the evidence because (a), it was obtained under an illegal search warrant, but if mistaken in that contention, then (b), the facts testified to by the witnesses for the Commonwealth do not possess the requisite probative value to support the conviction, and we are constrained to the conclusion that both contentions are correct.

Considering the first contention, (a), the warrant contained an extremely general and vague description of the property to be searched, without describing in any manner, general or otherwise, any building, but referring only to the "farms and residences and outbuildings in Madison county," of the persons named therein. But we have concluded that it will not be necessary for the disposition of this appeal to determine the sufficiency of that description in order to authorize the officer to search the entire premises and all the buildings located thereon, including the dwelling houses, since the affidavit upon which the warrant was issued wholly failed to measure up to the requirements in such cases. We have recently held in a number of cases in which others from other courts, as well as text writers, are cited that under the wording of our constitutional provision the affirmation or oath upon which the warrant is issued must contain more than the affiant's belief of the location of the forbidden

article, or that he merely "has reasonable grounds" for such belief.

In this case the only affidavit for the procurement of the search warrant that is made a part of the record states that the affiant has "reasonable grounds to believe," etc., and that his reason for entertaining such belief was "a general talk of the people in the neighborhood." A mere recitation of that reason is all that is necessary to demonstrate its insufficiency. It states no fact or circumstance calculated to inspire belief and purports to recite only a rumor without any fact for its foundation or whether it was of recent or remote circulation. It is, therefore, perfectly manifest that contention (a) must be sustained.

In disposing of contention (b), a brief recitation of the substance of the evidence is necessary. Matt Lakes, Will Lakes and Dan Lakes, persons named in the search warrant with the defendant, own land across a public road adjoining that owned by the defendant, and a portion of their land immediately opposite defendant's residence near the public road is woodland, with a number of paths traversing it, some of which, under the proof, have been used by the people of the neighborhood for as long as forty years. Defendant is distantly related to the others named, but is in no way interested in the control or management of their farms. About one hundred and fifty or two hundred yards from the public road separating the two farms and in the woodland the officers who executed the alleged search warrant found a still, and in searching the houses of some of the owners or possessors of that tract they found quite a quantity of moonshine whiskey. Defendant denies any knowledge of the existence of that still, and there is no proof, either direct or remote, that he possessed any such knowledge, much less that he owned any interest therein. The search of his house and premises revealed no whiskey nor any vessels indicating that they had ever contained whiskey. Some distance back of his house and near a spring there was evidence of a fire having been built, but whether recent or not is not shown, and defendant explains it by showing that his wife had used the place for the family washing. In the building containing defendant's crib the officers found an empty lard can with some faulty shelled corn in it and some of the grains were sprouted. Defendant plausibly accounts for that by saying that his crib leaked

and that he had gathered up that corn to be used by his wife in feeding her chickens. He exhibited a can of corn of the same size at the trial, which he testified was the one found by the officers and which they did not take away.

There was some evidence of the defendant's reputation for violating the provisions of the statute *supra,* but it was shown by most of the witnesses so testifying that the reputation referred to by them was created by the arrest of the defendant on this charge. On the other hand, defendant sustained his reputation in that respect by about an equal number of witnesses. Under our ruling in disposing of contention (a), *supra,* neither the evidence of the fire on the rock surface, above referred to, nor the corn found in the lard can may be considered on this trial, if we should concede they possess any probative value, which is untrue. But, notwithstanding the defective search warrant and the insufficient affidavit upon which it was based, defendant may not complain of the evidence as to the finding of the still on the premises adjoining his, since the protection of the constitutional provision is extended only to the owner of the wrongfully searched possessions or articles, or the one entitled to the possession of them and not to an entire stranger who neither owned nor possessed them. Bowling v. Commonwealth, 193 Ky. 642. The case, therefore, resolves itself to the inquiry, whether proof of the existence of a still located on another's land and about one hundred and fifty or two hundred yards of defendant's residence and about that distance from the boundary of his land, with no proof even remotely connecting him with its ownership or operation, plus the testimony with reference to his reputation, is sufficient to convict him of the charge of owning the still. We are constrained to the conclusion that only a negative answer may be given.

The statute (section 15 of the acts, *supra*) makes the reputation of the defendant in this character of prosecution admissible, and it may be conceded that it was the intention and purpose of the legislature to make such testimony substantive in its nature, the same as it is upon the trial of a number of other character of cases, but we are thoroughly convinced that it was never the intention and purpose to make that testimony *alone* sufficient to sustain a conviction. We are equally convinced that if

such was the intention and purpose of the legislature it would transgress the power and authority of that body, and would not be so administered by the courts. The undoubted purpose of such evidence was to create a corroborative circumstance which might render other guilty circumstances and facts more convincing and credible and thereby support a conviction, which without such testimony could not be upheld. But, in order to have that effect the corroborated testimony must of itself be of such a nature as to induce belief based upon a reasonable and logical conclusion of the defendant's guilt, and to consist of something other than a bare surmise or suspicion, although it might fall short of fully and completely convincing the jury or the court of the defendant's guilt. In that case the reputation evidence is admissible to remove the doubt growing out of the weakness of the corroborated evidence and thereby strengthen it so as to authorize the conviction by the trial tribunal. The weight, which we have herein attributed to the statutory reputation evidence, not only conforms to the immemorial rules of criminal procedure and practice, but is in harmony with the cherished doctrine of our American form of government, that no one shall be convicted of crime unless he is proven guilty beyond a reasonable doubt. To hold otherwise would not only be revolutionary but would be also a blow to enlightened justice and shock the conscience of all fair-minded men. That the mere fact of finding the still, located where it was, under the proven circumstances, was insufficient to create other than a mere surmise as to the existence of even a possibility that the defendant might have been its owner is perfectly manifest, and with it eliminated the only remaining substantive testimony was that relating to the defendant's reputation which, as we have seen, was insufficient to sustain the conviction, and the court erred in overruling defendant's motion for a peremptory acquittal.

Wherefore, the judgment is reversed, with directions to sustain the motion for a new trial and for proceedings consistent herewith.