## Drake et al. v. Commonwealth.

(Decided May 15, 1936.)

LEEBERN ALLEN for appellants.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Indicted for the offense of stealing chickens of the value of more than $2 (section 1201c, Ky. Stats. 1930), appellants were convicted and sentenced to serve two years in the penitentiary. Motion for a new trial was overruled, and they appeal.

While sundry grounds were set out in support of their motion for a new trial, on brief here it is insisted that the court below committed prejudicial error in overruling their joint motion for a peremptory instruction made at the close of the commonwealth's evidence and again at the close of the case.

Sam Spencer and D. B. King, neighbors, living in Lee county, suffered the loss of a number of chickens, during the night of March 22, 1935. Spencer lost fourteen or fifteen and King lost about nine. On the morning of the 23d, noting the absence of the chickens, they, in company with other persons, followed some tracks from their respective hen roosts to a point down to a creek, thence up the creek to a point where a foot-log crossed it, and from there a short distance up to what is called a "rockhouse." The proof shows that there

were two sets of tracks, apparently formed by men's shoes of sizes 8 or 9. There was also evidence that at two points the chickens had been placed on the ground, leaving a few feathers, which Spencer says corresponded to feathers of his chickens.

The rockhouse was said by witnesses to be a mile or three-quarters of a mile from the home of James Venters, father of appellant Venters. The road or path over which the parties made the tracks, when it reached the rockhouse, divided into three separate roads or paths, one leading directly to Venter's house, one to a point above, and the third to a point somewhere below the home where Venters and Drake had admittedly spent the night of March 22d.

From the testimony of four witnesses, who followed the tracks to the rockhouse, it is clear that they (the witnesses) all stopped at that point. No reason is given for their failure to proceed further.

The only other testimony which in any wise might circumstantially connect appellants with the theft was that of a witness who saw appellants pass his barn about daylight on the morning of March 23d in a truck with chickens in the bed of the truck. He started to Campton soon afterwards and passed the truck at Drake's home and saw the chickens, and the appellants afterwards passed witness on the way to Campton, and he again saw the chickens. Another witness saw the appellants driving the truck with the chickens in the bed of the truck. This was in broad daylight and the chickens were not concealed or covered up. Two witnesses say they saw appellants in a store at Campton the next morning, selling chickens to a merchant. The merchant says he bought $15 worth of chickens from appellants on the 23d, but on cross-examination says that he does not know whether or not he bought any chickens from them on that day.

Spencer sent his son to Campton on the 23d to see if he could locate the stolen fowls, but the son was unable to discover any trace of them. The appellants were shown to be of not too good reputations. The foregoing is all the proof adduced for the commonwealth.

The appellants, together with a number of members of the Drake family, testified that Drake and Ven-

ters had been working together for some time, clearing out the opening to a small coal mine. They stopped early on the afternoon of the 22d with the avowed purpose of fixing Drake's automobile so as to take chickens to Campton the next day. After the machine was fixed, they went to Venter's home, remained all night, arose about daylight, went to Drake's home where, several members of the family assisting them, they caught and tied about twenty-two chickens, which they openly hauled to Campton, and there openly sold to a merchant. It was established that Mrs. Drake (mother of appellant Drake) had died in January of 1935, and at the time of her death owned about 100 chickens, which the members of the family had been selling from time to time. No witness saw the appellants around either the Spencer or King homes on the night of the 22d, and none of them saw appellants take any of the chickens.

We have upheld judgments in many cases upon circumstantial evidence alone, but in all such cases the circumstances were of such force or character as to reasonably exclude the hypothesis of the defendant's innocence; or stated differently, where the evidence, though slight, formed a rational basis of guilt of the accused. Binion v. Com., 195 Ky. 217, 241 S. W. 803; Marcum v. Com., 212 Ky. 212, 278 S. W. 611.

In this case there was a failure to carry the investigation to such an extent as might have, if the circumstances had been found to exist, made the chain complete, or to have produced evidence sufficient in force to justify the submission of the issue to the jury. Concluding that there were too many links missing from the chain, we are of the opinion that the appellants were entitled to a directed verdict.

Judgment reversed, with directions to award a new trial.