## Wilson v. Commonwealth.

Jan. 17, 1941.

E. B. Rose for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Sometime during the night of June 11, 1938, Charles Arnold was killed on one of the public highways connecting Beattyville, the county seat of Lee county, with Booneville, the county seat of Owsley county—the spot on the highway where death was inflicted being about 4½ miles over the line in Lee county.

His body was discovered the next morning lying in a ditch by the side of the road, and a considerable amount of glass was also found, some of which came from the windshield of an automobile and other parts of it from one of the headlights on the same kind of vehicle. No one saw the collision resulting in Arnold's death, and to this day it is a matter of surmise and speculation as to how the accident occurred.

In the following November (1938) the grand jury of Lee county returned an indictment against appellant and defendant therein, Lawrence Wilson, accusing him of voluntary manslaughter, the indictment charging that he collided with the deceased, Charles Arnold, on the highway with his automobile that he was then driving, and that the collision was recklessly brought about and produced in such a manner as to render him guilty of the crime charged. To that indictment he pleaded not guilty and so testified upon his trial, but the jury found him guilty with an attached punishment of confinement for 2 years in the state penitentiary or reformatory. His motion for a new trial was overruled and from the verdict and judgment pronounced thereon he prosecutes this appeal.

A number of grounds were relied on in the motion for a new trial, but the brief of defendant's counsel appears to have abandoned all of them in this court except the refusal of the trial court to sustain defendant's motion for a peremptory instruction of acquittal at the close of the commonwealth's testimony and renewed at the close of all the testimony.

We have carefully read the record including, of course, the evidence heard at the trial and have arrived at the undoubtedly correct conclusion that none of the grounds relied on in the motion for new trial but not argued are sufficiently material for that purpose, leaving only the one complaining of the instructions given to the jury, and the one that is relied on and argued in this court as stated. The testimony in the case is entirely and exclusively circumstantial, since, we repeat, no one saw the accident and therefore, we are in utter darkness as to what occurred at the time, or what were the respective positions or actions of the parties, or any other facts which might shed light on who was to blame for the unfortunate occurrence; nor is there anything appearing to show the extent of the blame, if it could be fastened upon either of the parties concerned.

It would seem to be unnecessary to cite cases or text authorities announcing the principle that a conviction in a criminal prosecution may be sustained upon circumstantial testimony alone, when the proven circumstances are such as to link together and form a logical connection furnishing unerring grounds for belief in defendant's guilt, since both textwriters and courts, including this one, have unanimously so declared, and which is evidenced by domestic cases cited in Caldwell's Kentucky Judicial Dictionary under the treated heading of "Circumstantial Evidence." The latest ones are found in Volume 4 of that work on page 443. Among the many found therein is Johnson v. Commonwealth, 194 Ky. 568, 239 S. W. 1048, 1049, the holding in which is epitomized by this short excerpt, "Guilt may be shown by circumstantial evidence sufficient to destroy every reasonable hypothesis of innocence, but it cannot be established on mere suspicion or conjecture." Immediately following that statement and on page 444 of the same volume, this is said, "A criminal conviction may be had on circumstantial evidence alone, but in such cases the proven circumstances must be clear and convincing in order to sustain a conviction. Wells & Isaacs v. Commonwealth, 195 Ky. 740, 243 S. W. 1015." Only one more case will be cited from the long list of those listed in the work referred to, and which is, Meyers v. Commonwealth, 194 Ky. 523, 240 S. W. 71, wherein this court said that circumstantial evidence to justify a conviction " 'must point unerringly to the guilt of the ac-

cused, and the circumstantial evidence must be of such a nature as to establish the guilt with reasonable certainty.' ''

It would be no trouble at all to furnish a much longer list of cases from this court announcing the rule that if the proven circumstances possess no more convincing force than to create a suspicion or furnish grounds for a mere surmise, then a conviction will not be sustained, or if done in the trial court, it will not be approved by this one, and which necessarily follows by analogy from the approved rule announced in the cases supra pointing out the character of circumstantial evidence necessary to sustain a conviction, since, all the cases and textwriters in dealing with this question declare that where the proven circumstances are such as to logically and convincingly connect defendant with the commission of the crime with which he is charged and for which he is being tried, it is then of the most reliable character, although purely circumstantial. The corollary necessarily is, that when the purely circumstantial evidence does not measure up to the indicated standard, it is then insufficient to sustain a conviction and it becomes the duty of the court to so declare.

At the beginning we are confronted with the fact— hereinbefore related—that no one witnessed the accident involved in this case and we are for that reason without any knowledge whatever as to how it happened. Defendant lived in another county some 13 miles from the scene of its occurrence. Some 5 or 6 months prior thereto, he had purchased an old 1929 model T Ford automobile which had then been functioning for 9 years and in the meantime—according to undisputed proof— the left headlight that was in it when new had become broken and was replcaed by a new one made of different glass. The occurrence appears to have generated some indignation in the community and many persons engaged themselves in an effort to discover the perpetrator and to procure his punishment if he acted in a blameworthy manner in bringing about the collision resulting in Arnold's death. A number of persons were suspected, some of whom were arrested and at least one of whom had an examining trial before the county judge, but he was released. The other arrested ones convinced the prosecuting authorities of their innocence and they were also discharged. Some week or more

following the accident the county judge of Lee county observed a Ford automobile parked somewhere in Beattyville and he noticed that a part of the glass of the windshield was broken and pieces of glass were out of it. He also discovered that the right headlight was different from the left one, the latter being the one put there by the manufacturer. He either arrived at the conclusion or he suspected that the automobile which he discovered might be the one involved in the fatal collision whereby young Arnold lost his life. In the days following that discovery it was learned that appellant was the owner of that automobile, and after July 4 of that year (1938) a state patrolman (one Combs) and others went to the residence of appellant's mother—which was also the residence of appellant and wherein resided two sisters. Appellant kept his automobile in a barn not far from the residence and the investigators found that there were pieces of glass out of the windshield of his car and they tried to fit a piece of the windshield glass that had been picked up at the scene of the accident in the open spaces of the windshield of appellant's car but no witness testified that it fitted into that place. The most that any of them said was that it fitted to a certain extent but not perfectly. None of them even said that the opening in the windshield of appellant's car was of the same general shape as the picked up piece of glass that they tried to fit into it. They also learned at that time that the left headlight in appellant's car was a different one than its right headlight and which turned out to be a substituted one, for the original one that had been broken sometime after the car was put into use and during its many years of service. The evidence we have related was not only the strongest but also the substance of practically all of the testimony introduced by the commonwealth.

Defendant testified and proved by a number of witnesses—none of whom were contradicted—that on the night of the fatal occasion he was in no part of Lee county on any sort of mission. He testified, and proved by a number of witnesses—which no one contradicted and some of whom were not related to him—that in the late afternoon of June 11, he, following his custom since purchasing the automobile, transported for hire an individual, to some part of Owsley county where the latter desired to go and after delivering his passenger to his

destination he returned to his home via Booneville, the county seat of Owsley county, and arrived at his home between 8 and 9 o'clock, P. M., where he remained throughout the night. The witnesses supporting such activities of appellant, covering the period of the occurrence of the fatal accident to young Arnold in Lee county (including defendant himself) were most positive in their testimony with reference to the facts to which they testified and they were unshaken on cross-examination. One of them accompanied defendant in all of the rounds he made with his automobile on that occasion, and others testified to seeing him at different points enroute to the destination of his passenger, as well as on his return trip home. None of that testimony was even attempted to be rebutted, and it stands in this record entirely uncontradicted. But if all of that testimony as introduced by defendant was eliminated from the case, and reliance were placed exclusively on the testimony adduced by the commonwealth, we would then have but the meagre fact that appellant was found, after a considerable period of time following the accident, to be the owner of an old automobile with a part of the windshield broken out of it and a substituted right hand head light taking the place of the one that had theretofore been broken, the other proven circumstances in the case being practically with no material import. Even if the broken piece of glass from the windshield found at the scene had fitted perfectly into the hole found in the windshield of appellant's automobile, it would then at most possess but a more or less tendency to prove that it was his automobile that collided with the deceased. However we would still in that event be wholly uninformed as to whether the collision resulted from any carelessness or recklessness on the part of appellant, but which is essential in order to render him criminally liable therefor. The testimony, therefore, can be characterized by no other term than as being extremely ragged and entirely unconvincing. Perhaps the testimony as a whole might sustain a surmise that appellant may have been the guilty perpetrator, or rather that his automobile might have been the one involved in the collision, but such a conclusion is the only one that could be drawn from the testimony as adduced. We have seen however that a conviction will not be upheld on that character of testimony, but on the contrary, that where the circumstances are as consistent with the de-

fendant's innocence as with his guilt, it is then insufficient to support a conviction. Daniels v. Commonwealth, 194 Ky. 513, 240 S. W. 67; Hill v. Commonwealth, 191 Ky. 477, 230 S. W. 910; Denton v. Commonwealth, 188 Ky. 30, 221 S. W. 202; Mullins v. Commonwealth, 196 Ky. 687, 245 S. W. 285.

The conclusion we have reached is also shared by briefing counsel for the commonwealth as evidenced by this excerpt from their brief: "The Commonwealth fails to show that Wilson (appellant) was driving on this highway on the night in question, or that if he was driving that he was driving in a negligent manner. He denies being on the highway at that time and his testimony is uncontroverted, except by the glass found. We are not in position to argue to this Court that this sort of testimony is the type upon which a man's liberty should be taken. There is, of course, considerable doubt as to the guilt of this appellant, but since it is not established clearly that either appellant or his automobile was involved in the accident we cannot ask the Court to affirm this case." Without entering into an extended discussion we feel constrained to the conclusion that there was an utter failure of proof to connect appellant with participating in any manner in producing the fatal accident resulting in the death of Arnold, and for which reason the court should have sustained his motion for a directed acquittal. That conclusion renders it unnecessary to discuss or determine any question with reference to the instructions, although it may be said in passing that they do not conform to approved ones in such cases.

Wherefore, for the reasons stated the judgment is reversed with directions to set it aside and for proceedings consistent with this opinion.